UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KELLY S.[1],

          Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

Civil Action 3:23-cv-16
Judge Michael J. Newman
Magistrate Judge Chelsey M. Vascura

### REPORT AND RECOMMENDATION

Plaintiff, Kelly S., ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply Memorandum (ECF No. 10), and the administrative record (ECF No. 7). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the Commissioner of Social Security's non-disability determination and **OVERRULE** Plaintiff's Statement of Errors.

        **I.**        **BACKGROUND**

Plaintiff protectively filed her application for Title II disability insurance benefits and for Title XVI supplemental security income benefits on February 10, 2020, alleging that she became

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

disabled on January 17, 2020. Plaintiff's applications were denied at the initial and reconsideration levels. An administrative law judge ("ALJ") held a telephone hearing on August 31, 2021. Plaintiff was represented by counsel, and an impartial vocational expert ("VE") also appeared. Additional medical records were entered into the record following the hearing, and the ALJ issued an unfavorable determination on December 22, 2021. That unfavorable determination became final on February 11, 2022, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. Plaintiff asserts two contentions of error: (1) the ALJ erred in evaluating the severity of her mental health impairments and failing to include any limitations related to mental health in Plaintiff's residual functional capacity ("RFC"); and (2) the ALJ erred in evaluating medical opinion evidence when determining Plaintiff's RFC. (Pl.'s Statement of Errors 5–19, ECF No. 8). These contentions of error lack merit.

## II. THE ALJ'S DECISION

On December 22, 2021, the ALJ issued her decision. The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through September 30,

2024. (R. 19.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since the alleged onset date of January 17, 2020. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of degenerative changes of the cervical sand lumbar spine, spondylosis, osteoarthritis left shoulder, bilateral plantar fasciitis, sensory and diabetic polyneuropathy, diabetes, peptic ulcer, gastritis, osteoarthritis of the bilateral knees, and ganglion cyst left wrist. (*Id.*) In addition, the ALJ found that Plaintiff's depressive and anxiety disorders were medically determinable, but that they were not severe. (*Id.* at 20–21.) The ALJ then set forth Plaintiff's RFC[3] as follows:

> After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift/carry 20 pounds occasionally and 10 pounds frequently. She can sit 6 hours and stand/walk 6 hours in an 8-hourwork [sic] day, with normal breaks. She can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs. She can frequently balance as defined by the Selected Characteristics of Occupations (SCO). The [Plaintiff] can occasionally stoop, kneel, and [crouch] but never crawl. [Plaintiff] can frequently reach, handle, and finger with her bilateral upper extremity. The [Plaintiff] can have only

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

> occasional exposure to vibration. She is unable to work at unprotected heights or in the vicinity of uncovered unguarded moving machinery. She can frequently rotate her neck.

(*Id.* at 23–24.) At step four, the ALJ relied on testimony from a vocational expert to determine that Plaintiff was able to perform her past relevant work as a Mail Sorter and Security Guard. (*Id.* at 27.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 17, 2020, through the date of the ALJ's determination. (*Id.* at 28.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

4

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

Plaintiff contends that the ALJ erred (1) by failing to find Plaintiff's mental health impairments were severe at step two and failing to include any mental health limitation in the RFC determination (Pl's Statement of Errors 5–9, ECF No. 8); and (2) in evaluating the medical source opinions, prior administrative findings, and objective medical evidence in determining Plaintiff's RFC. (*Id.* at 8–10.) These contentions of error lack merit.

**A.     The ALJ appropriately considered Plaintiff's mental impairments at step two and in determining Plaintiff's RFC.**

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of*

5

*Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months," 20 C.F.R. §§ 404.1509, 416.909. Here, at step two, the ALJ found that Plaintiff had the severe impairments of degenerative changes of the cervical sand lumbar spine, spondylosis, osteoarthritis left shoulder, bilateral plantar fasciitis, sensory and diabetic polyneuropathy, diabetes, peptic ulcer, gastritis, osteoarthritis of the bilateral knees, and ganglion cyst left wrist. (R. 19–20.)

In her analysis of Plaintiff's mental health impairments at step two, the ALJ considered each of the four "paragraph B" criteria[4] of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. First, the ALJ found that Plaintiff had only mild limitations in the ability to understand, remember, or apply information. (*Id.* at 20.) In support of that determination, the ALJ noted that although Plaintiff "reported some issues with concentration," (*id.*) she reported "that she could follow written and spoken instructions 'Okay'." (*Id.*, citing R. 256.) The ALJ also noted that Plaintiff had no impaired school performance and no history of special education. (*Id.*, citing R. 242.) Second, the ALJ explained that Plaintiff had only mild limits in the ability to maintain social function. (*Id.* at 20) The ALJ explained that "[t]here is no indication that the claimant has an inability to initiate and maintain social contacts, communicate clearly, and demonstrate cooperative behaviors, particularly, with people in authority." (*Id.*) The record showed that

---

[4] The four aspects of mental functioning are referred to as the "paragraph B" criteria, as they appear in paragraph B of many Listings involving mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(b).

6

Plaintiff spent time with family members and friends, and had no trouble getting along with family, friends, and neighbors. (*Id.*, citing R. 255.) The ALJ also noted that Plaintiff consistently interacted well and was "cooperative during her medical visits, demonstrating the ability to interact with others appropriately according to the setting." (*Id.*, citing R. 1307–636.) Third, the ALJ found that Plaintiff had only mild limits in her ability to maintain concentration, persistence, and pace. (*Id.* at 20.) Although Plaintiff reported that she has trouble completing tasks, she went on to say "that it 'depends on the subject' how long she could pay attention." (*Id.*, citing R. 256.) The ALJ also noted that Plaintiff "reported she could maintain sufficient focus to read, watch television, watch movies, and use the internet." (*Id.* at 21, citing R. 255.) Fourth, the ALJ found that Plaintiff had only mild limits in her ability to adapt or manage herself. The ALJ noted that "in her Consultative Examination, Plaintiff reported that she has some problems handling stress but handles changes in routine okay." (*Id.*, citing R. 357.) The ALJ noted that there was no evidence in the record that Plaintiff had problems handling her personal finances or attending to personal care and hygiene. (*Id.* at 21, citing R. 354–55.) The ALJ concluded, "Because the [Plaintiff's] medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere" (*Id.*, citing 20 CFR 404.1520a(d)(1) and 416.920a(d)(1).)

Because the ALJ found that Plaintiff suffered from some severe impairments, Plaintiff's assertion that the ALJ erred concluding that Plaintiff's mental health limitations were non-severe at step two misses the mark. Because the ALJ found that Plaintiff had some severe medically determined impairments, Plaintiff passed step two's "screen" for "totally groundless" claims (*see Higgs,* 880 F.2d at 863), and the ALJ then continued through the next steps in the five-step

7

analysis. "[T]he fact that some of a claimant's impairments were not deemed to be severe at step two is legally irrelevant where other impairments are found to be severe." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (cleaned up); *see also Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (explaining that where the Commissioner finds at least one severe impairment, the failure to find that a different impairment constituted a severe impairment "could not constitute reversible error"); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (same).

Instead, the pertinent inquiry is whether the ALJ considered the limiting effects of all of Plaintiff's impairments, including Plaintiff's mental health impairments, in determining Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), (e); 20 C.F.R. §§ 416.945(a)(2), (e). The determination of a claimant's RFC is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity.") Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996)**.** An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

8

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted). Whether the ALJ considered the limiting impacts of all impairments is to be gleaned from the ALJ's determination as whole. *Emard*, 953 F.3d at 851–52.

The question now before the Court is whether the ALJ appropriately considered any limiting effects caused by Plaintiff's mental impairments in assessing Plaintiff's RFC. The undersigned concludes that she did. First, the ALJ explained her consideration of the opinions of the state agency psychological consultants, Drs. Tangeman and Katz. (R. at 25.) The ALJ found those opinions partially persuasive. The ALJ found that Plaintiff had mild limitations in all four paragraph B criteria, while Dr. Tangeman and Dr. Katz had reviewed the record and both had concluded that Plaintiff had no limitations in two of those criteria: understanding, remembering and applying information, and the ability to adapt or manage oneself. (*Id.* at 75–76, 83–84, 94, 102.) The ALJ explained that "[w]hile I did find mild limitations in all areas of functioning, whereas the consultants determined [Plaintiff] had no limitations in some areas, I am persuaded that [Plaintiff]'s mental impairments are not severe." (*Id.* at 25.)

Next the ALJ, considered the opinions of James Burkhardt, D.O., who had completed both a Physical Residual Functional Capacity Assessment (PRFC) and a Mental Impairment Questionnaire for Plaintiff. (*Id.* at 1448-54, 1455-57.) In arguing that the ALJ erred in finding Plaintiff's mental health impairments non-severe, Plaintiff points to Dr. Burkhardt's opinions

9

that: (1) "he expected [Plaintiff's] anxiety and depression to make her pain worse"; (2) "Plaintiff would be unable to complete a normal work day and work week without interruption from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods"; (3) that Plaintiff suffered from "Anxiety and Depression with specific signs and symptoms including sleep disturbance, mood disturbances, decreased energy, generalized persistent anxiety, and feelings of guilt/worthlessness"; and (4) that Plaintiff "had mild limitations in some areas of mental functioning, and moderate limitations in the ability to complete tasks in a timely manner, the ability to ignore or avoid distractions while working, the ability to sustain an ordinary routine and regular attendance at work, the ability to adapt to changes, and the ability to manage her psychologically based symptoms." (Pl's Statement of Errors 6 – 7, ECF No. 8, citing R. 1449, 1455–56).)

The AJL considered Dr. Burkhardt's opinions only partially persuasive, because she saw internal inconsistencies in some of his opinions and inconsistencies with the record, and there was minimal support for provided for his opinions. (R. 26.) For example, Dr. Burkhardt was inconsistent in opining on how often Plaintiff would be off-task because of her symptoms, reporting in his Mental Health Questionnaire that she would be off-task less than 10% of the time, but opining in the PRFC that she would be off-task 10–20% of the time. (*Id*.). Furthermore, as the ALJ noted, Dr. Burkhardt also opined that "Plaintiff could sustain full-time competitive work due to mental health limitations." (*Id.*) In fact, in his Mental Impairment Questionnaire of Plaintiff, Dr. Burkhardt answered "Yes" to the question of whether:

> Based upon your medical evaluations and all available medical records, do you believe [Plaintiff] would be able to perform regular, full-time, competitive work (including jobs consisting of simple routine tasks) on a sustained basis without missing work more than two times per month, being off-task more than 15% of the workday, or needing additional breaks due to either [Plaintiff'] impairments, [Plaintiff's] medical appointments, and/or [Plaintiff's] treatments."

10

(*Id*. at 1457.) In any event, consistent with the ALJ determination, Dr. Burkhardt concluded that, overall, Plaintiff had only mild limitations in all four paragraph B categories. (*Id*.) Finally, Plaintiff does not identify any workplace limitation that Dr. Burkhardt recommended that is materially different than those in the RFC as determined by the ALJ.  In short, there is no basis in the record to conclude that the ALJ erred in how she considered Dr. Burkhardt's opinions.

Plaintiff also asserts that the opinion of Dr. Barwick, the consultative examining psychologist, is inconsistent with the ALJ's failure to include any mental health limitations in Plaintiff's RFC, because Dr. Barwick diagnosed Plaintiff with "Unspecific Depressive Disorder and Unspecified Anxiety Disorder," (Pl's Statement of Errors 7, ECF No. 8), and "opined that [Plaintiff] endorsed symptoms of anxiety including hand tremors, nervousness, and excessive worry that could contribute to slowed work productivity." (*Id.*). Plaintiff is incorrect. "[D]etermining how certain diagnoses and symptoms bear on a claimant's capacity to work is . . . a matter explicitly within the ALJ's purview." *Luukkonen v .Comm'r of Soc. Sec.*, 653 Fed. App'x 393, 401 (6th Cir. 2016). *See also* 20 C.F.R. § 416.929(c)(1). In her consideration of Dr. Barwick's report, the ALJ summarized Dr. Barwick's observations of Plaintiff during her examination:

> [Plaintiff] functioned in the average range of intelligence. She did not appear easily distracted and did not report prior difficulties with task completion. Further, she interacted appropriately and did not report a history of conflicts with others in the workplace. There were no intellectual limitations to hinder response to supervisory feedback. Further, she did not present as emotionally overwhelmed or with intellectual limitations that would hinder her ability to problem-solve or adapt to unexpected changes in working conditions. Dr. Barwick diagnosed [Plaintiff] with unspecified depressive disorder and unspecified anxiety disorder (Ex. 11F). I find this opinion generally persuasive with the medical record.

(R. 27, citing R803–10.) The ALJ analyzed Dr. Barwick's opinion before finding it persuasive and consistent with the ALJ's determination of only mild impairments in all four paragraph B categories.  Finally, as with Dr. Burkhardt, Plaintiff does not point to any opinion of Dr. Barwick

11

recommending any specific limitation on Plaintiff's RFC that is inconsistent with the ALJ's determination.

In the step-two analysis of Plaintiff's mental health impairments, the ALJ wrote that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." (*Id.* at 21.) Plaintiff asserts as error that the ALJ "failed to provide a more detailed assessment" of Plaintiff's mental health limitations at step four. (Pl's Statement of Errors 5, ECF No. 8.) As explained above, however, in determining Plaintiff's RFC, the ALJ expanded on her analysis from step two and considered the evidence in the record concerning Plaintiff's mental limitations, describing that evidence and explaining why she considered it persuasive or not. In sum, although the ALJ did not include any mental limitations in Plaintiff's RFC, she thoroughly considered the mental health evidence of record, and that evidence provides substantial support for the ALJ's determination that Plaintiff's mental health impairments were mild and did not impact her RFC.

**B.     The ALJ did not commit reversible error in assessing the evidence in the record when determining Plaintiff's RFC.**

Plaintiff contends that the ALJ committed multiple reversible errors evaluating the medical source opinions, the prior administrative findings, and the objective medical evidence in determining her RFC. Plaintiff asserts that the ALJ improperly found the opinions of state agency reviewing physicians, Drs. Mutchler and Hughes, partially persuasive, even though they formed their opinions before certain MRIs of Plaintiff's spine were performed in 2021. (Pl.'s Statement of Errors 11, 13, ECF No. 8.) Plaintiff further argues that the ALJ failed to sufficiently explain why she found an opinion by Plaintiff's podiatrist, Dr. Little, contained on a PRFC assessment, not persuasive, even though Dr. Little, unlike the state agency reviewing physicians, reviewed those MRIs prior to forming his opinion. (*Id.* at 11, 13–14.) Plaintiff also asserts that

12

the ALJ failed to sufficiently address whether Dr. Little's opinion was supported by the record and substituted her own opinion for the opinion of Dr. Frank Fumich concerning the Plaintiff's back pain. (*Id.* at 11–13.) The undersigned disagrees.

An ALJ is not required to base her RFC determination on a medical opinion. *Mokbel-Aljani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Timothy R. J. v. Comm'r of Soc. Sec.* 3:22-cv-216, 2023 WL 2258524, at *3 (S.D. Ohio Feb. 28, 2023 (citing *Moknel-Aljani*). *See also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination on medical opinions would transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source). Nor does an ALJ err by relying on medical opinions from physicians who have reviewed an incomplete record if the ALJ considers later evidence and adequately accounts for changes in a claimant's conditions. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding no error where an ALJ relied on opinions from state agency reviewers where the ALJ considered later evidence and accounted for relevant changes in the plaintiff's condition).

When evaluating the persuasiveness of medical opinions, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most

important, and an ALJ must explain how she considered them when she evaluated a medical opinion. §§ 404.1520c(b)(2); 416.920c(b)(2).

The ALJ noted that Plaintiff has a history of back pain that began in 2011. (R. 24.) On February 1, 2021, Plaintiff was seen at the Dayton Pain Center for pain management at which time "she reported back and neck pain, and numbness and tingling over her right leg and left foot. Notably, her medications were working, and she rated her pain as a four out of ten." (*Id.*, citing R. 1463.) On March 30, 2021, Dr. Burkhardt ordered cervical and lumbar spine MRIs for Plaintiff. (*Id.* at 1342.) On April 20, 2021, Dr. Burkhardt reviewed the results of those MRIs with the Plaintiff and referred Plaintiff to neurosurgery. (*Id.* at 1330.) The ALJ wrote that on April 26, 2021, at a follow-up visit at the Dayton Pain Center, Plaintiff reported she had 50 percent pain relief due to her medications" (*Id.*, citing R. 1472.) The ALJ further noted notes from an August 24, 2021 appointment with Dr. Fumich, Plaintiff reported "continued low back pain and difficulty walking due to pain in her back and legs." (*Id.* at 25.) During the visit with Dr Fumich, Plaintiff again rated her pain as a four out of ten. (*Id.* at 1603.) The ALJ continued, "[h]owever, her physical examination revealed that her strength was well-maintained and was graded 5 out of 5 with her resisted knee extension. Further radiographs of her lumbar spine revealed well-maintained grade 1 degenerative instability. Further, she had some lumbar stenosis at L4-L5. She was assessed with lumbosacral spinal stenosis. Her treatment options included epidural injections with possible surgical intervention. However, she was cautioned to stop smoking for better recovery (Ex. 27F, pg. 2). Therefore, it appears to me that her condition is relatively controlled." (*Id.*)

The ALJ next discussed the various medical opinions concerning Plaintiff's RFC in the record. The state agency reviewers, Drs. Mutchler and Hughes, offered their findings based on

14

the evidence of record at the time of their reports, August 21, 2020, and March 22, 2021, respectively, prior to the MRIs at issue. (*Id.* at 79, 98.) As to the opinions of Drs. Mutchler and Hughes, the ALJ wrote:

> The State agency consultants assessed the claimant as retaining the capacity to perform a range of work at the light exertional level. I found the assessments that the claimant can perform the exertional demands of light work to be generally persuasive as they supported by the medical evidence reviewed. Further, these opinions are generally consistent with objective findings on examination. *However, records through the hearing level support additional restrictions, including only frequent rotation of the neck. Therefore, overall this [sic] opinions are partially persuasive.*

(*Id.* at 25) (emphasis added). Thus, the ALJ's RFC determination was *more* restrictive than the state agency reviewing physicians' opinions, because of the ALJ's consideration of the evidence developed after those opinions were offered.

The ALJ then detailed the opinion of Dr. Burkhardt, the treating physician who had ordered the MRIs at issue and had discussed the testing results with Plaintiff:

> [Dr. Burkhardt] noted that [Plaintiff] could lift/carry 20 pounds occasionally and 10 pounds frequently. He reported the [Plaintiff] had limitations with standing/walking and can stand/walk 4-6 hours at a time up to 8 hours total; and sit 8 hours at a time up to 8 hours total. He reported the [Plaintiff] could never crawl, occasionally crouch, kneel, and climb, and frequently balance.

(*Id.* at 26.) Dr. Burkhardt had also noted that the degenerative change in Plaintiff's MRI was "mild." (*Id.* at 26, 1493.) As explained above, the ALJ found inconsistencies in some aspects of Dr. Burkhardt's opinion that caused her to consider his opinions only partially persuasive, (*id.*) But in the end, the ALJ incorporated into Plaintiff's RFC all the limits opined by Dr. Burkhardt, except for his absenteeism limits, and added some additional limits. Because Dr. Burkhardt had ordered the MRIs, had reviewed the MRI results, and had discussed those MRI results with Plaintiff, Plaintiff is incorrect in asserting that the ALJ's determination of Plaintiff's RFC was "based on no medical source opinion, or an outdated source opinion that did not include

15

consideration of a critical body of objective medical evidence." (Pl's Statement of Errors 14, ECF No. 8 (*quoting Kizys v. Comm'r of Soc. Sec.,* No. 3:10-CV-25, 2011 WL 5024866, at *1-3 (N.D. Ohio Oct. 21, 2011).)

The ALJ next discussed the opinion of Dr. Little, Plaintiff's podiatrist. On July 28, 2021, Dr. Little completed his PFRA. (R. 1458–62.) In it, he circled or checked "YES" to indicate that Plaintiff's impairments affected lifting/carrying, standing/walking, sitting, postural activities, reaching, handling, fingering, feeling, and pushing/pulling. (*Id.* at 1458-60.) Dr. Little further found that Plaintiff's impairments restricted exposure to moving machinery and vibration. (*Id.* at 1461.) Based on these findings, Dr. Little endorsed the following limits: Plaintiff could stand/walk for two hours total during an eight-hour workday, could stand and walk for 1 hour without interruption on any single occasion during the workday, could sit for two to three hours total during an eight-hour workday, could lift five pounds occasionally and zero pounds frequently, could occasionally balance and stoop, but never climb, crouch, kneel, or crawl. (*Id.* at 1458-60.) When asked what medical findings supported his assessment of Plaintiff's lifting/carrying, Dr. Little wrote "2 discs in cervical and 2 discs in lumbar affected."(*Id.* at 1458.) Likewise, in support of the standing/walking, climbing, balancing, stooping, crouching, kneeling, and crawling limits, Dr. Little wrote "see MRI's [sic] of cervical/lumbar." (R. 1459–60.) Dr. Little also cited an NCV/EMG in support of his endorsement that Plaintiff's impairments affected her physical functions. (R. 1460.) When asked how the impairments affected those physical functions, he wrote "walking/standing/pushing/pulling." (*Id.*) Dr. Little also cited the NCV/EMG in support of his endorsement that Plaintiff's impairments affected environmental exposure. (R. 1461.) Dr. Little circled "YES," indicating that Plaintiff had peripheral neuropathy, resulting in an extreme limitation in the ability to stand up from a seated position, balance while

16

standing or walking, or use of the upper extremities. (R. 1462.) Dr. Little did not further explain which of these abilities were affected or how the impairments affected them. (*Id.*) Finally, Dr. Little wrote that he could not opine upon Plaintiff's ability to complete light or sedentary work, referencing Plaintiff's upcoming visit with Dr. Frank Fumich. (R. 1462.)

> The ALJ discussed how she considered Dr. Little's PRFC:
>
> Eugene Little, M.D. provided a [PRFC] for [Plaintiff]. He opined [Plaintiff] could lift no more than five pounds, stand for no longer than one hour, and never climb, crouch, kneel, and crawl (Ex. 24F). I note that this opinion is significantly more limiting than Dr. Burkhardt. Dr. Little essentially opines [Plaintiff] had an inability to sustain work activity at the light or sedentary level given limitations noted of sitting two to three hours total and that she could stand/walk 2 hours total. However, he then states [he] is unable to answer whether sedentary or light work can be performed when directly asked, with manipulative limitations. The opinion is not well supported and is not consistent with the remaining record, summarized above. Accordingly, I find this opinion not persuasive.

(R. 26.) As this discussion demonstrates, the ALJ focused this discussion on the consistency factor in considering Dr. Little's PRFC. The ALJ noted that Dr. Little's limits were significantly more restrictive than the limits set forth by Dr. Burkhardt, and thus were not consistent with the same. (*Id.*) Furthermore, like Dr. Burkhardt, both state agency consultants assessed Plaintiff as capable of performing at the light exertional level. (*Id.* at 25.)

The ALJ also concluded that Dr. Little's findings were not supported by the record evidence summarized above. (R. 26.) Dr. Little cited Plaintiff's MRIs and NCV/EMG testing, without any detailed explanation for how or why those test results led him to reach his conclusions as to Plaintiff's limitations in his PRFC. The ALJ's RFC determination describes those test and explains why those tests support her RFC determination. The ALJ noted that Dr. Burkhardt, the physician who ordered the MRIs of Plaintiff's spine and who discussed the testing results with Plaintiff, characterized the spinal degeneration reflected in those MRIs as "mild," (*id.*), observing that the MRIs "revealed well-maintained grade 1 degenerative instability." (*Id.* at

17

25.) The ALJ also cited treatment notes relating to Plaintiff's back, neck, and leg pain, specifically noting that on February 1, 2021, Plaintiff rated her pain as a four out of ten and acknowledged that her medications were working. (*Id.* at 24, citing R. 1603.) The ALJ further cited to notes from an April 26, 2021 follow-up appointment, after the MRIs at issue were taken, where Plaintiff "reported that she had 50 percent pain relief due to her medications" (*id.* at 25, citing R. 1472), and that a physical exam in in August 2021 "revealed that her strength was well-maintained and was graded 5 out of 5 with her resisted knee extension." (*Id.*)

The ALJ also discussed the Plaintiff's neuropathy and NCV/EMG testing, which Dr. Little cited to support his opinion, as follows:

> It should be noted that treatment records show she has complained of ongoing foot pain. When she has presented to care she reported that it was aggravated by prolonged standing. Her clinical assessment was diabetic sensorimotor polyneuropathy, sensory polyneuropathy, and plantar fasciitis. An Electrodiagnostic Consultation administered on April 16, 2021, revealed only mild peroneal lesion at the right knee and only mild polyneuropathy (Ex. 16F, pg. 1). However, during her follow-up visits, she stated that her pain was relieved by the medication Neurontin (Ex. 17F, pg. 19).

(R. 26.) Here, the ALJ noted Plaintiff had testing that showed mild impairments and once again observed that that Plaintiff's pain was relieved by medication.

On Plaintiff's assertion that the ALJ failed to adequately detail the "supportability" of Dr. Little's opinion, the undersigned concludes that the ALJ—by discussing all of the testing that Dr. Little indicated that he relied upon—made "sufficient factual findings elsewhere in [her] decision" and was not required to "spell out every fact a second time." *Forrest v. Comm'r of Soc. Sec.*, 591 Fed. App'x 359, 366 (6th Cir. 2014) (citing *Bledsoe v. Barnhart,* 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination and finding no need to require the ALJ to "spell out every fact a second time")).

18

In short, the undersigned finds substantial evidence in the record to support the ALJ's RFC determination, that the ALJ considered all of the evidence in the record when determining Plaintiff's RFC, and no legal error committed by the ALJ that would require remand.

## V. RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Specific Errors. (ECF No. 8.)

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE